Below is an opinion of the court.

PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>LESLIE TAIKO NITCHER,<br><br>            Debtor. | Bankruptcy Case<br>No. 18-31729-pcm7 |
| LESLIE TAIKO NITCHER,<br><br>            Plaintiff,<br><br>    v.<br><br>EDUCATIONAL CREDIT MANAGEMENT<br>CORPORATION, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2006-3,<br>NATIONAL CRLLEGIATE STUDENT LOAN<br>TRUST 2007-4, AND PNC BANK, N.A.,<br><br>            Defendants. | Adv. Proc. No. 18-03090-pcm<br><br>MEMORANDUM DECISION |

This adversary proceeding tells a far too common story of the plight of a professional swallowed by massive student loan debt, much of which she has no hope of repaying during her lifetime. In 2005, when Leslie Nitcher ("Nitcher") enrolled in law school, it was with the hope and expectation her advanced degree would lead to a legal career at a level of compensation commensurate with the standard of living that

Page 1 – MEMORANDUM DECISION

lawyers historically have enjoyed. Instead, she faced a bleak job market when she graduated from law school in 2008. After trying to balance her living expenses and massive student debt for 11 years, Nitcher finally succumbed to her growing consumer debt.  She filed chapter 7 bankruptcy and received her discharge. The question posed for the court in this case is to what extent her student loan debt will remain a noose around her economic neck for the remainder of her economically productive years.

After considering the evidence presented, I hold that payment of the entire debt would impose an undue hardship on Nitcher and that the debt is discharged to the extent it exceeds $16,500.00.  My findings of facts and conclusions of law follow.[1]

## I.  Procedural Background

Nitcher filed this adversary proceeding seeking a partial or total discharge of her student loans. Nitcher's original Complaint, Doc. 2, named fourteen loan servicers as defendants. After she was able to identify the current holders and servicers of her loans, Nitcher dismissed most of the defendants. See Doc. 40.  Nitcher filed a First Amended Complaint, Doc. 41, against the remaining defendants: PNC Bank, N.A., Educational Credit Management Corporation ("ECMC"), National Collegiate Student Loan Trust 2006-3 and National Collegiate Student Loan Trust 2007-4 (together, "NC").

---

[1]This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases.  It may, however, be cited for whatever persuasive value it may have.

Page 2 – MEMORANDUM DECISION

PNC Bank, N.A., did not file an Answer. Nitcher and ECMC settled and ECMC was dismissed from this action. Docs. 49, 50. NC was the sole remaining active defendant at the time of trial.

The bulk of Nitcher's loans are held by ECMC and are federal student loans. Pursuant to the parties' settlement agreement, Nitcher stipulated to the non-dischargeability of the student loans held by ECMC and will apply for a Revised Pay as You Earn (REPAYE) Income Driven Repayment program once her loans with ECMC have been consolidated. The balance owed ECMC as of February 26, 2019, is $198,691.00. Doc. 49. Nitcher testified her initial payment under the REPAYE program will be approximately $479.00 a month and is subject to increases as her income increases.

## II. Facts

At issue in this adversary proceeding are three private loans held by NC. The loans are identified as Loan ID #001, #002, and #003 (together, the "Student Loans"). Loan #001 was disbursed in August 2005 in the original amount of $20,032.26. Loan #002 was disbursed in October 2005 in the original amount of $1,505.38. Loan #003 was disbursed in August 2006 in the original amount of $24,064.52. As of August 28, 2018, the charge-off balance of the loans is $23,744.33, $823.13, and $27,254.16, respectively, for a total of $51,821.62. Statement of Joint Stipulated Facts for Trial in Adversary Proceeding ("Stipulated Facts"), Doc. 64. All three loans had variable interest rates.

Loan #002 has fully matured. Plaintiff's Exhibit 1, p. 11. Loan #001 was to mature in November, 2028, and Loan #003 was to mature in

Page 3 – MEMORANDUM DECISION

October, 2028.  Id. at pp. 1, 21.  However, after Nitcher defaulted, the entire balance of each loan was accelerated, and NC filed suit in state court to collect the balances owed on Loans #001 and #003. Plaintiff's Exhibit 2, pp. 7, 13. In response, Nitcher filed this chapter 7 proceeding before the state court entered judgments on the loans.

Nitcher does not dispute her liability for, or the amount of, the Student Loans or that she obtained those loans for educational purposes. NC does not dispute Nitcher has paid a total of $18,215.82 toward her student loan obligations to NC. Stipulated Facts.

Nitcher is a 38-year-old, single attorney with no dependents.  She is a graduate of Oregon State University and Willamette University School of Law.  She was admitted to the Oregon State Bar in 2008.  After graduation, Nitcher was unable to find full-time employment.  She lived in Salem, Oregon and did sporadic contract work for different attorneys. She was self-employed from October 2010 through August 2014. In 2014, Nitcher accepted a position with the small criminal defense firm of Kollie Law Group (formerly DeKalb & Associates) in Bend, Oregon.  She has been steadily employed there since 2014. Her taxed Social Security income since 2010 is as follows:

| 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|------|------|------|------|------|------|------|------|
| $17,131 | $40,981 | $34,168 | $45,378 | $62,672 | $60,112 | $68,813 | $74,403 |

Nitcher's W-2 earnings for 2018 were $69,398.00. Stipulated Facts. Debtor testified that given her age, education, background, experience,

Page 4 - MEMORANDUM DECISION

location and practice, she is probably near the top of her earning potential.

The record shows Nitcher has no nonexempt assets. She owns no real estate, drives a 2012 car worth less than $11,000.00, and has no retirement accounts or retirement benefits through her employer. Plaintiff's Exhibit 7.

### III. Standard for Student Loan Discharge

A student loan is dischargeable in bankruptcy if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. §523(a)(8). Undue hardship is determined by applying the three-part test enunciated in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987). In re Pena, 155 F.3d 1108, 1111 (9th Cir. 1998). The burden of proving undue hardship is on the debtor and the debtor must prove all three elements of the Brunner test before discharge can be granted. In re Rifino, 245 F.3d 1083, 1087-1088 (9th Cir. 2001). If the debtor fails to satisfy any one of those elements, "'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" Id. at 1088 (quoting In re Faish, 72 F.3d 298, 306 (3d Cir. 1995)).

If a debtor proves the undue hardship test is met as to only a portion of the debt, the court can partially discharge the debt. In re Myrvang, 232 F.3d 1116, 1123-24 (9th Cir. 2000); In re Howe, 319 B.R. 886, 889 (9th Cir. BAP 2005)(citing In re Saxman, 325 F.3d 1168, 1173 (9th Cir. 2003)); In re Sequeira, 278 B.R. 861, 865 (Bankr. D. Or. 2001). "The bankruptcy court has discretion in determining the amount and terms

Page 5 – MEMORANDUM DECISION

of payment of a partial discharge." In re Jorgensen, 479 B.R. 79, 86

(9th Cir. BAP 2012). See also Sequeira, 278 B.R. at 866 (same).

The first prong of the Brunner test requires a showing that the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for herself if forced to repay the loans. Brunner, 831 F.2d at 396. "[A] 'minimal standard of living' must be determined 'in light of the particular facts of each case.'" Howe, 319 B.R. at 890 (quoting In re Cota, 298 B.R. 408, 415 (Bankr. D. Ariz. 2003)). The debtor must make "more than a showing of tight finances" but is not required to prove "utter hopelessness." In re Nascimento, 241 B.R. 440, 445 (9th Cir. BAP 1999). The application of this prong of the test requires an examination of the debtor's current finances. Howe, 319 B.R. at 890.

The second part of the test requires the debtor to show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396.

> Additional circumstances are any circumstances, beyond the mere current inability to pay, that show the inability to repay is likely to persist for a significant portion of the repayment period. The circumstances need be "exceptional" only in the sense that they demonstrate insurmountable barriers to the debtor's financial recovery and ability to pay.

In re Nys, 308 B.R 436, 444 (9th Cir. BAP 2004), aff'd, 446 F.3d 938 (9th Cir. 2006). A court may consider a number of factors, not limited to the following: the debtor's age, training, physical and mental health,

Page 6 – MEMORANDUM DECISION

education, assets, and ability to obtain a higher paying job or reduce expenses. Id.

The final prong of the Brunner test requires the debtor to prove that she made a good faith effort to repay the loans or show that the forces preventing repayment are truly beyond her control. Jorgensen, 479 B.R. at 89 (citing Brunner). Good faith is determined by the debtor's efforts to obtain employment, maximize income, minimize expenses and negotiate a repayment plan. In re Mason, 464 F.3d 878, 884 (9th Cir. 2006). "Whether a debtor made payments prior to filing for discharge is also a persuasive factor in determining whether she made a good faith effort to repay her loans." Jorgensen, 479 B.R. at 89. However, a history of making or not making payments is, by itself, not dispositive. Mason, 464 F.3d at 884.

## IV. DISCUSSION

### A. First Prong: Ability to Maintain Minimal Standard of Living

At first glance, Nitcher does not fit the standard profile of a debtor who is unable to maintain a minimal standard of living while repaying her student loans. However, the trial exhibits and testimony tell a different story. At trial, Nitcher introduced her Amended Schedules I and J, Plaintiff's Exhibit 8, listing her monthly income and expenses. Schedule I shows: gross monthly income of $5,304.00, tax withholdings of $1,565.00, and monthly net income of $3,739.00. Schedule J lists the following expenses:

| Rent | $1,500.00 | Transportation | 350.00 |
|---|---|---|---|
| Renter's Insurance | 14.00 | Recreation | 50.00 |
| Heat & Electricity | 200.00 | Life Insurance | 120.00 |
| Cell Phone, Internet | 288.00 | Auto Insurance | 119.00 |
| Food & Housekeeping | 500.00 | Flex Spending Acct | 83.00 |
| Clothing & Dry Cleaning | 145.00 | Pet Care | 50.00 |
| Personal Care Products | 100.00 | ECMC Loan | 479.00 |
| Medical & Dental | 215.00 | Total Expenses | $4,213.00 |

Those expenses, which include the anticipated payment to ECMC in the amount of $479.00, result in a negative monthly net income of ($474.00).

Nitcher admits some of her monthly expenses exceed the IRS Standards. "While a bankruptcy court may consider the IRS Standards as one piece of evidence in relation to its first prong analysis, it should not use the IRS Standards as the sole measure of what is necessary to maintain a minimal standard of living." Howe, 319 B.R. at 892-893. The IRS Standards represent average expenditures only for certain categories of basic living expenses. In addition, the IRS Standards do not provide for certain expenses that courts have recognized as necessary to the maintenance of a minimal standard of living in § 523(a)(8) cases. Id. See also Jorgensen, 479 B.R. at 87 (approving additional allowance for food, clothing, and vehicle purchase). In addition to the IRS Standards, the court may look to the disposable income test of chapter 13 (11 U.S.C. §1325(b)) for guidance in determining what is necessary to maintain a minimal standard of living. In re Carnduff, 367 B.R. 120, 132-33 (9th Cir. BAP 2007).

Page 8 – MEMORANDUM DECISION

Nitcher testified that the move to Bend did increase her income, but it also increased her monthly expenses. She testified, credibly, that Bend is a tourist town where rents, food costs, utilities and gas prices are higher than in Salem. NC argues that certain of Nitcher's budget items are excessive or unnecessary. I agree in two respects.

At trial, Nitcher testified she maintains a life insurance policy naming her non-dependent mother as a beneficiary because of her mother's recent divorce. Although admirable, that $120.00 monthly expense is not necessary for Nitcher to maintain a minimal standard of living. Nitcher's transportation expense at $350.00 a month is likely excessive. However, even if the life insurance expense is eliminated and the transportation expense is reduced, Nitcher will not be able to pay her necessary living expenses and maintain a minimal standard of living.

Importantly, the Student Loans have all matured or been accelerated. If those loans are not discharged, Nitcher's required payments on the Student Loans will consume 25% of her net income and her wages will be subject to garnishment by NC until the Student Loans are fully paid. Based upon Nitcher's current net income of $3,739.00, NC would be entitled to garnish approximately $935.00 per month of Nitcher's wages. Although NC's counsel argued Nitcher may be able to reach an accommodation with NC, any repayment concession or other restructuring is subject to the unilateral discretion of NC because these are private student loans. Even with further trimming, Nitcher's budget cannot support a garnishment by NC, ECMC's payment and a minimal standard of living.

Nitcher points out that the term "undue hardship" was not defined

Page 9 – MEMORANDUM DECISION

at the time of the Brunner decision and has not been well-defined by any court since.  In the context of reaffirmation agreements, Nitcher argues, "undue hardship" is defined as expenses exceeding income.  She then concludes that, based on her Schedules I and J, she meets that threshold.  I disagree that the Brunner undue hardship standard is as formulaic as Nitcher argues and that it is the same as that applicable in the reaffirmation context.  Having a negative net income on Schedule J certainly is a factor to consider, but it is only one factor.  For the reasons stated, I find that Nitcher has satisfied the first prong of the Brunner test as properly applied in the context of a §523(a)(8) proceeding.

**B. Second Prong: State of affairs likely to persist for a significant portion of the repayment period**

The second prong of the Brunner test is the most challenging for Nitcher.  This prong requires a showing "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396.  "[N]either Brunner nor Pena imposes a requirement that additional circumstances be 'exceptional' in the sense that the debtor must prove a 'serious illness, psychiatric problems, disability of a dependent, or *something* which makes the debtor's circumstances more compelling than that of an ordinary person in debt.'" In re Nys, 446 F.3d 938, 946 (9th Cir. 2006)(quoting BAP decision in Nys, 308 B.R. at 444).  The debtor is required to show only that she will be unable to maintain a minimal standard of living now and in the future if forced to repay her student loans.  Id.

Page 10 – MEMORANDUM DECISION

The court in Nys stated that it would "not presume that an individual's present inability to make loan payments will continue indefinitely." 446 F.3d at 946. Instead, the court held that "[w]e will presume that the debtor's income will increase to a point where she can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with 'additional circumstances' indicating that her income cannot reasonably be expected to increase and that her inability to make payments will likely persist throughout a substantial portion of the loan's repayment period." Id. "Additional circumstances" include, but are not limited to:

> [(1)] Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; [(2)] The debtor's obligation to care for dependents: [(3)] Lack of, or severely limited education; [(4)] Poor quality of education; [(5)] Lack of usable or marketable job skills; [(6)] Underemployment; [(7)] Maximized income potential in the chosen educational field, and no other more lucrative job skills; [(8)] Limited number of years remaining in [the debtor's] work life to allow payment of the loan; [(9)] Age or other factors that prevent retraining or relocation as a means for payment of the loan; [(10)] Lack of assets, whether or not exempt, which could be used to pay the loan; [(11)] Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; [(12)] Lack of better financial options elsewhere.

Id. at 947 (quoting BAP decision in Nys, 308 B.R. at 446-47).

NC addressed the bulk of the "additional circumstances" set forth in Nys during cross examination of Nitcher and makes a superficially compelling argument that she failed to meet her burden. Nitcher testified that she has no serious medical issues or dependents; is well educated; has marketable job skills; is fully employed; has many

Page 11 – MEMORANDUM DECISION

fruitful years of gainful employment ahead; and has a vehicle that could be sold with the proceeds applied to the Student Loans. NC contends Nitcher is unable to demonstrate her current tight financial circumstances are likely to persist for a significant portion of the repayment period because she is only 10 years into her legal career and, according to NC, has prospects to increase her income if she so chooses. NC argues that Nitcher has nothing in writing showing she applied for other positions in a more lucrative area of the law or in a geographic area with more opportunity.

Despite the surface appeal of NC's argument, Nitcher testified that her prospects for future increased income are modest at best. Due to market conditions, she found work and developed expertise in indigent criminal defense. Her pay and job are subject to her firm retaining its criminal defense contracts at their current levels. Although Nitcher can earn additional money if she works on "private pay" clients, those amounts have been steadily minimal over the past three years. She testified she already works approximately 50 hours a week and does not have the time to work another job. She further testified that she has no civil experience and is not qualified to be hired to do civil work, at least not without starting at lower pay if she could find a job. Nitcher also testified that she has been looking for other jobs in the area, but nothing has come available. She indicated she would be hard-pressed to find a position at higher pay. I found Nitcher's testimony on these points to be convincing and credible.

Nitcher's young age and advanced education make this analysis difficult. Attorneys can certainly make significant amounts of money,

Page 12 – MEMORANDUM DECISION

well more than the $64,000 annual income currently being generated by Nitcher.[2] Further, her income has incrementally increased since 2008 when she graduated from law school. However, focusing on the evidence before me, and considering the credible testimony of Nitcher, I believe she has shown that the current state of affairs is likely to persist for a significant period.

If NC is left to its own devices and garnishes Nitcher's wages for the next several years, she will be left unable to make her monthly payment to ECMC, let alone afford the necessities of life. In addition, Nitcher's required payment to ECMC will increase if her gross wages increase. The applicable formula translates to an additional $300.00 per month in payments to ECMC for every $2,000 of increased gross income. The effect of an increase in income would also increase the amount of Nitcher's wages subject to garnishment by NC, thereby substantially diluting any benefit from an increase in income.

The second prong of Brunner also "requires the court determine if the debtor will remain at the margins of a minimal standard of living 'for a significant portion of the repayment period.'" In re Price, 573 B.R. 579, 597 (Bankr. E.D. Pa. 2017)(quoting Brunner), *rev'd on other grounds*, Devos v. Price, 583 B.R. 850 (E.D. Pa. 2018). In addressing the temporal nature of the second prong of the Brunner test, the Price court characterized the relevant inquiry to involve two questions: "(1) How long is the applicable repayment period? (2) What is a 'significant portion' of that repayment period (sufficient to warrant discharge of the debtor's student loan)?" 573 B.R. at 597.

---

[2] Nitcher's current annual income as reflected on her Amended Schedule I is $63,648.00.

Page 13 – MEMORANDUM DECISION

> The longer the repayment period, the more difficult the Debtor's evidentiary burden. It also is possible that a debtor might establish that his or her financial difficulties will not abate for a finite period that constitutes a "significant portion" of the existing contractual repayment period, but that longer term prospects, within a "significant portion" of an available extended repayment period are more favorable. Thus, the choice of repayment period is potentially outcome-determinative in this and other cases.

Id. at 597-98. After an in depth analysis, the bankruptcy court concluded that the "repayment period" was the original, seven-year contract term and that five years constituted a "significant portion" of that repayment period. Id. at 602-08.

Nitcher and NC disagree on the applicable repayment period. Consistent with Price, Nitcher argues that the applicable repayment period is the remaining term of the loans: Zero for Loan #002 and 9 years for the other two loans. NC argues that the remaining term should start as of 2015, the date Nitcher entered into a default status on her loans. NC's position would result in a repayment period of approximately 13 years. I conclude that the repayment period is the remaining repayment term for each loan: for Loan #2, Zero; and for Loans 1 and 3, 110 months, assuming a start date of September 1, 2019. NC does not cite any authority for the proposition that the repayment period should be extended due to default and offers no convincing argument why I should stray from the well-reasoned analysis of the court in Price.

Page 14 – MEMORANDUM DECISION

Nitcher's inability to pay her basic living expenses, the ECMC debt and the NC garnishment will continue for a substantial duration of the repayment period. She will drown from the weight of her necessary monthly living expenses, her payment to ECMC, and a garnishment of 25% of her net wages, even with a material increase in her compensation.

Therefore, I conclude Nitcher has met her burden of proof as to the second prong of the Brunner test.

## C. Third Prong: Good Faith Efforts to Repay the Debt

"To determine a debtor's good faith efforts to repay the loan, the court measures the debtor's efforts to obtain employment, maximize income, minimize expenses, and negotiate a repayment plan." Jorgensen, 479 B.R. at 89. Whether a debtor made payments prior to filing for discharge is also a persuasive factor in determining a good faith effort to repay student loans. Id.

NC claims Nitcher has not made a good faith effort to repay the Student Loans. In support of that contention, NC points out that Nitcher stopped making payments on her loans in late 2015, just when her income was increasing significantly. Nitcher argues she has made significant payments, including voluntary payments on the federal loans, and payments of more than $18,000 to NC. She also paid off her state student loan by cashing out a small 401k account.

A review of Nitcher's bankruptcy schedules demonstrates that the timing of her default is not a product of a failure to make good faith efforts to repay the debt, but rather because she fell prey to her

Page 15 – MEMORANDUM DECISION

consumer debt, which piled up as she valiantly tried to continue paying her student loans. Nitcher's schedules show that she had amassed significant credit card debt. Nitcher testified she incurred that debt in trying to pay for normal living expenses and stay current on her student loans. She also suffered the interception of her federal tax refunds by her federal student loan lender during the times she was in default. Many of the cases that address this prong of the Brunner test, struggle with cases where income-contingent repayment plans are available, but have not been applied for, or situations where the debtor has made minimal or no payments on their student loans. See, e.g, Mason, 464 F.3d 878; In re Birrane, 287 B.R. 490 (9th Cir. BAP 2002).

Nitcher presents a different profile. She made substantial payments to NC and her other lenders, even when she was a recent graduate with almost no income. She credibly testified, without contradiction, that she was offered settlement options with NC, but none that reduced the payments or the amount due to a level she could afford. She has voluntarily entered a repayment program with ECMC which will last for 20-25 years, at which time she likely will still have a significant balance due on her federal loans that will be discharged. There is no mandated income-driven repayment option available to Nitcher with regard to the Student Loans without NC voluntarily agreeing to such a payment plan. Nitcher has made every effort to maximize income, even by moving cities to accept a full-time position at her law firm. She incurred consumer debt to supplement her resources and lives in a one-bedroom condominium, drives a 7-year-old car, and has limited assets. She has no retirement or other savings.

Page 16 - MEMORANDUM DECISION

I therefore find Nitcher has met this prong of the <u>Brunner</u> test with ease.

### V. PARTIAL DISCHARGE

The reason that I have concluded that the Student Loans should be discharged is largely because Nitcher cannot survive if NC garnishes her wages. The fact that NC is a private lender complicates the equation because there is no income driven repayment option available. However, the fact that Nitcher cannot afford to repay the Student Loans in full, does not mean that she cannot afford to pay some portion of those loans in smaller periodic payments. As stated, in the Ninth Circuit, a bankruptcy court may partially discharge student loans when payment of the full amount would constitute an undue hardship. <u>See</u>, <u>e.g.</u>, <u>Saxman</u>, 325 F.3d at 1173.

As I discuss above, some of Nitcher's expenses are not necessary to maintain a minimal standard of living. The life insurance expense is unnecessary and Nitcher's transportation budget is excessive. It is also reasonable to presume her income will increase modestly as she continues to practice indigent criminal defense. Therefore, I conclude that Nitcher can afford to pay the sum of $150.00 per month and under the circumstances, I find it appropriate she make payments for the remainder of the repayment period,110 months. That sum equals $16,500.00. Rather than discount this amount to a present value and add interest, I have reached this number based on the debtor's ability to pay, and such amount will not accrue interest.

### VI. CONCLUSION

1  For the reasons stated, I find that the Student Loans are

2  discharged to the extent they exceed $16,500.  Loans 001 and 003 shall

3  be decelerated. No interest shall accrue on the loans.  All other terms

4  of the notes shall remain as in the original.  Unless the parties agree

5  otherwise, the Debtor shall commence making payments of $150.00 per

6  month on September 1, 2019, and shall make 110 consecutive monthly

7  payments.

8

9      Mr. Parker should submit an order consistent with this decision.

10

11                              ###

12

13 cc:  Mr. Parker
        Mr. Kullen
14

15

16

17

18

19

20

21

22

23

24

25

26

Page 18 – MEMORANDUM DECISION